**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| DEVON CURTIS, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff,*<br><br>v.<br><br>7-ELEVEN, INC, a Texas Corporation,<br><br>*Defendant.* | ) | Case No. 21-cv-06079<br><br>Hon. Steven C. Seeger<br><br>Hon. Magistrate Jeffery I. Cummings |

**FIRST AMENDED CLASS ACTION COMPLAINT & JURY DEMAND**

Plaintiff, Devon Curtis, brings this Class Action Complaint against Defendant 7-Eleven, Inc. ("7-Eleven") to stop Defendant from making false and deceptive claims that its store brand plastics products are recyclable where in fact they are not, and to seek redress for those who purchased these products. Plaintiff seeks damages, restitution, and injunctive relief against Defendant for selling products that did not conform to the representations it made to consumers. On her own behalf and on behalf of similarly situated individuals, Plaintiff alleges as follows based on personal knowledge as to herself and her own acts and experiences, and as to all other matters, on information and belief, including an investigation by her attorneys.

**NATURE OF THE ACTION**

1. Defendant 7-Eleven operates one of the largest chains of convenience stores in the country with a total of 9,522 U.S. locations throughout the United States. With such size, comes a drastic ecological footprint given the disposable and one-time use nature of many of the products that it sells.

2.  Well aware of consumers' "green consciousness" and their desire to purchase products that are environmentally friendly, Defendant has placed various labels and disclosures on its 7-Eleven store brand plastic products identifying them as recyclable.

3.  Specifically, Defendant's store brand "24/7 Life" plastic Foam Cups, Foam Plates, Party Cups and Freezer Bags, feature deceptive labeling that they are recyclable.

4.  While Defendant has labeled its 24/7 Life plastic products as recyclable, the truth is that Defendant's 24/7 Life plastic products are not recyclable because they are made out of plastics that are not recyclable in any municipal recycling facilities that consumers have access to. Thus, while consumers are led to believe that they are purchasing products that they can recycle, and believe that these products actually do get recycled when they put them in their recycling bins, consumers are in fact misled because the products are ultimately not recycled and end up in the landfill.

5.  While 7-Eleven is aware that its 24/7 Life plastic products do not actually get recycled, it nonetheless continues to advertise and sell them with the deceptive disclosures knowing that consumers would never find out what happens to the products after they place them in recycling bins.

6.  Had consumers, such as Plaintiff, who purchased 7-Eleven's 24/7 Life plastic products known that they are not actually recyclable, they would not have purchased them, or would have paid less for them than they did.

7.  Plaintiff brings this action for Defendant's violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), as well as other similarly identical states' consumer protection laws, along with common law transgressions, on her own

behalf and on behalf of other purchasers of 7-Eleven's 24/7 Life plastic products that Defendant falsely marketed as recyclable.

**PARTIES**

8. Plaintiff Devon Curtis is a natural person and at all relevant times has been a resident of Cook County, Illinois.

9. Defendant 7-Eleven Inc. is a Texas corporation that conducts, and is licensed by the Illinois Secretary of State to conduct, business throughout Illinois, including in Cook County, Illinois, and elsewhere throughout the country.

**JURISDICTION AND VENUE**

10. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) and (d), because: (i) at least one member of the putative class is a citizen of a state different from any Defendant; (ii) the amount in controversy as to all putative class members exceeds $5,000,000; and (iii) none of the exceptions under that subsection applies to the instant action.

11. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) because a substantial part of the events and/or omissions giving rise to the claim occurred in this District.as Plaintiff was knowing sold products falsely advertised as "recyclable" by Defendant in this District.

**COMMON FACTUAL ALLEGATIONS**

12. Defendant 7-Eleven operates one of the largest multinational chains of convenience stores.

13. Many of the products sold by Defendant are disposable products that are packaged in or otherwise use single-use plastics.

14. Single use plastics are not recyclable or compostable and, as their name implies, can only be used once and are then thrown out to be sent to trash disposal facilities such as incinerators or landfills.

15. Given the amount of products sold by Defendant on a daily basis that utilize single-use plastics, Defendant has a very large ecological footprint. In fact, Defendant is a material contributor to the world's plastic production and plastic pollution.[1]

16. As a result of growing media and public attention to the growing issue of plastic pollution and single use plastics, many consumers try to purchase products that are environmentally friendly, including plastic products that are recyclable, so that they can help prevent further waste pollution and to minimize their environmental footprint.

17. Defendant sells a variety of products that it produces, manufactures, and designs itself under its own "24/7 Life" store brand, including a number of plastic products.

18. Knowing that there is a growing demand for environmentally friendly products, and recognizing that it is a major contributor to global plastics pollution, Defendant labels its 24/7 Life plastic products with various claims regarding their recyclability.

19. For plastic waste to be recycled it must be taken to a municipal recycling facility to collect and separate the plastic waste based on the type of plastic resin it consists of. This is why plastic manufacturers mark their products with a Resin Identification Code ("RIC").

20. When sorting plastic waste, recycling facilities sort the plastics into 7 categories based on the RICs marked on the waste. RICs 1 through 6 are specific plastic resins, and RIC 7 is a catch all for all remaining plastic resins.

---

[1] www.greenpeace.org/international/story/47609/7-eleven-taiwan-announces-phase-out-of-single-use-plastics-a-first-in-asia/; https://ibanplastic.com/7-eleven-loves-plastic/.

21. For example, and as seen below, Defendant labels its 24/7 Life Foam Plates as "RECYCLABLE" directly on the front of the product packaging.

22. However, as shown below, the foam plates themselves do not feature any RIC number on the front or the back and thus cannot be separated in the recycling process and actually be recycled.

23. Furthermore, even if the plates were properly labeled as RIC No. 6 – for styrofoam plastic – as with the vast majority of recycling facilities around the United States, there are no recycling facilities in the Chicago region that recycle RIC No. 6 plastics.

24. While Defendant attempts to qualify its recycling claim by stating "check your local municipality for recycling guidelines" on the product packaging, Defendant's disclosure is also in itself misleading and deceptive as it does not adequately disclose the limited availability of recycling programs that accept and recycle RIC No. 6 Styrofoam plastic.[2]

25. This practice of labeling products as "recyclable" even though they will never actually be recycled once they are delivered to the local recycling facility and will be sorted to be sent to landfill is called "greenwashing."

26. With a growing number of companies making deceptive recycling claims about their products, the Federal Trade Commission issued its "Green Guides" regarding "Environmental Marketing Claims" and has stated that it "is deceptive to misrepresent, directly or by implication, that a product or package is recyclable. A product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." 16 C.F.R. § 260.12(a). "While a product may be technically recyclable, if a program is not available allowing consumers to recycle the product, there is no real value to consumers." *See* 63 Fed. Reg. 84:24240, at 24243 (May 1, 1998).

[2] *See* www2.illinois.gov/cms/agency/recycling/i-cycle/Pages/plastics.aspx (noting that RIC No. 6 plastic is "notorious for being difficult to recycle, and thus, bad for the environment. This kind of plastic also poses a health risk, leaching potentially toxic chemicals, especially when heated. Most recycling programs won't accept it.").

27. Defendant engages in this very deceptive practice with a number of its 24/7 Life plastic products.

28. For example, Defendant's 24/7 Life branded Foam Cups are deceptively labeled as "recyclable" even though they are made of RIC No. 6 styrofoam plastic that is not actually recycled by any municipal recycling facilities.

29. Defendant's 24/7 Life Party Cups also feature the same bold "RECYCLABLE" claim even though they are made from RIC No. 5 plastic. As Defendant is, or should be aware, there is currently no market for RIC No. 5 plastics and less than 5% of all RIC No. 5 plastic collected nationwide is actually recycled.[3] As such, even if collected, Defendant's 24/7 Life Party Cups will either be stockpiled, incinerated, or sent to a landfill.

[3] *See* www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf, at 22.




30. As shown below, Defendant also deceptively advertised and labeled its 24/7 Life Freezer Bags as "made with recyclable polyethylene*".





31. However, there are three separate and very different types of polyethylene plastics that represent three different RICs.

32. Defendant's Freezer Bags are unmarked without any RIC number. Thus, there is no way for the Freezer Bags to be separated during the sorting process and they cannot be recycled.

33. As shown above, while Defendant labels and advertises its 24/7 Life plastic products as "recyclable," these products are not actually recyclable.

34. Importantly, Defendant goes beyond just placing a small recycling symbol on the back of its packaging. Rather, Defendant intends for consumers to rely on its recyclable claims by placing it in bold font on the front of the packaging for consumers to review and consider.

35. Indeed, Defendant's deceptive recycling claims caused injury to reasonable consumers like Plaintiff and Class members who did rely on Defendant's claim that its 24/7 Life plastic products were recyclable and would not have purchased Defendant's products, or would have paid less for them, had they known that these claims were false.

36. Accordingly, Plaintiff brings this action on her own behalf and on behalf of proposed Class and Subclass of similarly situated individuals in order to obtain redress for those who were deceived by Defendant's conduct.

**FACTS SPECIFIC TO PLAINTIFF**

37. In the summer of 2021, Plaintiff purchased a number of Defendant's 24/7 Life brand products, including Defendant's Foam Plates, Foam Cups, Party Cups, and Freezer Bags, at one of Defendant's 7-Eleven stores located in Chicago, Illinois.

38. When purchasing these products, Plaintiff saw Defendant's labeling and advertising that they were "recyclable" and reasonably understood that the products would actually be recycled if she placed them for recycling with her municipal recycling service.

39. While Plaintiff placed the products for recycling with her municipal recycling service after using them, for the reasons stated above, none of the products were actually recycled.

40. Plaintiff would not have purchased these products from Defendant, or would have paid less for them, had she known Defendant's representations that they were recyclable were false and that after placing these products for recycling they would actually end up being disposed as regular waste products.

**CLASS ACTION ALLEGATIONS**

41. Plaintiff brings this action on behalf of herself and a nationwide class (the "Class"), with one subclass (the "Subclass") defined as follows:

> The Class: All persons in the United States who, within the applicable statute of limitations, purchased any of Defendant's 24/7 Life plastic products that were labeled as recyclable and did not feature an RIC number on the product itself.
>
> The Subclass: All persons who, within the applicable statute of limitations, purchased any of Defendant's 24/7 Life plastic products from one of Defendant's 7-Eleven retail store locations in Illinois that were labeled as recyclable and did not feature an RIC number on the product itself.

42. Excluded from the Class and Subclass are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

43. Upon information and belief, there are thousands of members of the Class and Subclass, making the members of the Class and Subclass so numerous that joinder of all members

is impracticable. Although the exact number of members of the Class and Subclass is currently unknown to Plaintiff, the members can be easily identified through Defendant's purchase records.

44. Plaintiff's claims are typical of the claims of the members of the Class and Subclass Plaintiff seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other members of the Class and Subclass are the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class and Subclass. As alleged, Plaintiff and the other members of the Class have all suffered harm and monetary damages as a result of Defendant's deceptive and misleading conduct.

45. There are many questions of law and fact common to the claims of Plaintiff and the Class and Subclass, and those questions predominate over any questions that may affect individual members. Common questions for the Class and Subclass include, but are not limited to, the following:

(a) Whether Defendant advertised that certain 24/7 Life plastic products were recyclable;

(b) Whether the products advertised by Defendant as "recyclable" were in fact recyclable;

(c) Whether Defendant's advertising of certain 24/7 Life products was false or misleading;

(d) Whether Defendant's conduct violates public policy;

(e) Whether Defendant's conduct violated the Illinois Consumer Fraud Act and other such similar statutes;

    (f)    Whether as a result of Defendant's misrepresentations of material facts related to its 24/7 Life products, Plaintiff and the other members of the Class and Subclass have suffered ascertainable monetary losses;

    (g)    Whether Plaintiff and the other members of the Class and Subclass are entitled to monetary and/or restitution and/or injunctive relief or other remedies, and, if so, the nature of such remedies.

46.    Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication.

47.    Plaintiff will adequately represent and protect the interests of the members of the Class and Subclass. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class and Subclass.

48.    Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

**COUNT I**
**For Violations of Consumer Protection Laws**
**(on behalf of the Class and Subclass)**

49. Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

50. The ICFA, as well as other materially identical consumer fraud statutes enacted by states throughout the country, prohibit deceptive acts and practices in the sale and marketing of products such as Defendant's 24/7 Life plastic products.

51. Plaintiff and the other members of the Class and Subclass are "consumers" or "persons," as defined under the ICFA and other states' consumer protection laws.

52. Defendant's conduct as alleged herein occurred in the course of trade or commerce.

53. Defendant's actions in affirmatively representing and advertising that its 24/7 Life plastic products are recyclable, when in fact in practice they are not, offends public policy, has caused and continues to cause substantial injury to consumers, and constitutes a deceptive trade practice.

54. Further, Defendant's conduct in false labeling its 24/7 Life plastic products as recyclable violates the Federal Trade Commission Green Guide regulations, which state that:

> It is deceptive to misrepresent, directly or by implication, that a product or package is recyclable. A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item.

16 C.F.R. § 260.12(a).

> Marketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers. (1) When recycling facilities are available to a substantial majority of consumers or communities where the item is sold, marketers can make unqualified recyclable claims. The term "substantial majority," as used in this context, means at least 60 percent. (2) When recycling facilities are available

> to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims. Marketers may always qualify recyclable claims by stating the percentage of consumers or communities that have access to facilities that recycle the item. Alternatively, marketers may use qualifications that vary in strength depending on facility availability. The lower the level of access to an appropriate facility is, the more strongly the marketer should emphasize the limited availability of recycling for the product. For example, if recycling facilities are available to slightly less than a substantial majority of consumers or communities where the item is sold, a marketer may qualify a recyclable claim by stating: "This product [package] may not be recyclable in your area," or "Recycling facilities for this product [package] may not exist in your area." If recycling facilities are available only to a few consumers, marketers should use stronger clarifications. For example, a marketer in this situation may qualify its recyclable claim by stating: "This product [package] is recyclable only in the few communities that have appropriate recycling facilities."

16 C.F.R. § 260.12(b)(1)&(2).

55. Conduct that is deceptive under the FTC's regulations is also *per se* deceptive under the ICFA and other consumer fraud statutes enacted by states throughout the country. *See* 815 ILCS 505/2.

56. Defendant's 24/7 Life plastic products were labeled as recyclable even though they could not be "collected, separated, or otherwise recovered from the waste stream through an established recycling program." Nor did Defendant appropriately disclose the availability of recycling programs that would accept the products. As such, Defendant's advertising and labeling of its 24/7 Life plastic products violated the FTC's Green Guides and as such were in violation of the ICFA and similar such consumer fraud statutes.

57. Plaintiff and the other members of the Class and Subclass reasonably relied on Defendant's misrepresentations regarding the recyclability of its 24/7 Life plastic products in choosing to purchase Defendant's products, and would not have purchased the products that they bought, or would have paid materially less for them, had Defendant not made the false and deceptive representations regarding their recyclability.

58. As a direct and proximate result of Defendant's false and deceptive advertising and labeling of its 24/7 Life plastic products, Plaintiff Curtis and the other members of the Class and Subclass have suffered actual damages. These damages are concrete and ascertainable and were proximately caused by Defendant's violations of the ICFA and other such materially identical consumer fraud statutes.

59. Defendant's conduct is in violation of the ICFA and other states' consumer protection laws, and pursuant to 815 ILCS 505/10a and other such states' consumer protection laws, Plaintiff and the other members of the Class and Subclass are entitled to damages in an amount to be proven at trial, reasonable attorney's fees, and any other penalties or awards that may be appropriate under applicable law.

**COUNT II**
**Breach of Express Warranty**
**(on behalf of the Class and Subclass)**

60. Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

61. Through its products labeling and advertising on its 24/7 Life plastic products that Plaintiff and the Class and Subclass members had purchased, Defendant expressly warranted to Plaintiff and the other members of the Class and Subclass that these products were recyclable.

62. These affirmations of fact and promises regarding Defendant's 24/7 Life plastic products being recyclable were part of the basis of the bargain between Defendant and Plaintiff and the other members of the Class and Subclass. Plaintiff and the other members of the Class and Subclass would not have purchased Defendant's 24/7 Life plastic products, or would have paid materially less for them, had they known that these affirmations and promises were false.

63. Defendant breached the express warranties it represented about its 24/7 Life plastic products being recyclable because, as set forth above, the 24/7 Life plastic products purchased by Plaintiff and the other members of the Class and Subclass were not actually recyclable.

64. As a direct and proximate result of Defendant's breach of its express warranties, Plaintiff and the members of the Class and Subclass have been damaged in an amount to be determined at trial.

**COUNT III**
**Unjust Enrichment**
**(on behalf of the Class and Subclass)**

65. Plaintiff hereby incorporates the allegations set forth in Paragraphs 1–48 above.

66. Plaintiff and the other members of the Class and Subclass conferred a benefit on Defendant by purchasing its 24/7 Life plastic products.

67. It is inequitable and unjust for Defendant to retain the revenues obtained from Plaintiff's and the other Class and Subclass members' purchases of Defendant's 24/7 Life plastic products because Defendant knowingly misrepresented that these products were recyclable and Plaintiff and the other members of the Class and Subclass would not have purchased Defendant's 24/7 Life plastic products, or would have paid less for them, had Defendant not made these misrepresentations.

68. Accordingly, because Defendant will be unjustly enriched if it is allowed to retain such funds, Defendant must pay restitution to Plaintiff and the other Class and Subclass members in the amount which Defendant was unjustly enriched by each of their purchases of Defendant's 24/7 Life plastic products.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class and Subclass, prays for the

following relief:

1. An order certifying the Class and Subclass as defined above;

2. An award of actual or compensatory damages, or, in the alternative, disgorgement of all funds unjustly retained by Defendant as a result of its unfair and deceptive sales practices;

3. An award of reasonable attorney's fees and costs; and

4. Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: December 2, 2022

DEVON CURTIS, individually and on behalf of a Class of similarly situated individuals

/s/ Eugene Y. Turin
One of Plaintiff's Attorneys

Eugene Y. Turin
Colin P. Buscarini
Andrew T. Heldut
Chandne Jawanda
McGuire Law, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
cbuscarini@mcgpc.com
aheldut@mcgpc.com
cjawanda@mcgpc.com

*Attorneys for Plaintiff and the putative Class*