## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DEVON CURTIS, individually and on behalf of similarly situated individuals, ) ) ) | |
| *Plaintiff*, ) ) | Case No. 21-cv-06079 |
| v. ) ) | Hon. Steven C. Seeger |
| 7-ELEVEN, INC., a Texas corporation, ) ) | |
| *Defendant*. ) ) ) | |
| _____ ) | |

## PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION - REDACTED

Plaintiff Devon Curtis, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, hereby moves for entry of an Order certifying the below-proposed Class, appointing Plaintiff Devon Curtis as Class Representative, and appointing Plaintiff's attorneys as Class Counsel. In support of her Motion, Plaintiff submits the following Memorandum of Law.

Dated: January 31, 2024

Respectfully submitted,

DEVON CURTIS, individually and on behalf of a class of similarly situated individuals,

By: */s/Eugene Y. Turin*          

Eugene Y. Turin
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
bduffnder@mcgpc.com
*Attorneys for Plaintiff and the Putative Class*

i

## TABLE OF CONTENTS

I.      **INTRODUCTION**................................................................................................................1

II.     **SUMMARY STATEMENT OF FACTS**..........................................................................4

      A.      **Defendant's Recyclable Products Were Uniformly Deceptive** ..........................4

      B.      **Plaintiff Purchased Defendant's Recyclable Products In Reliance On Their Product Packaging**..................................................................................................7

III.    **THE PROPOSED CLASS** ................................................................................................7

IV.     **ARGUMENT** ......................................................................................................................8

      A.      **Legal Standard** ......................................................................................................8

      B.      **The Requirements of Rule 23(a) are Satisfied**..................................................8

            1.      Numerosity..................................................................................................8

            2.      Commonality................................................................................................9

            3.      Typicality....................................................................................................11

            4.      Adequacy....................................................................................................12

      C.      **The Proposed Class Is Ascertainable** ................................................................13

      D.      **The Requirements of Rule 23(b)(3) are Satisfied**............................................14

            1.      Predominance..............................................................................................14

            2.      Superiority..................................................................................................18

V.      **CONCLUSION** ................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................................14, 18

*Amgen v. Conn. Ret. Plans & Trust*,
    568 U.S. 455 (2013) ...............................................................................................................8

*Bakov v. Consol. World Travel, Inc.*,
    No. 15-cv-2980, 2019 WL 1294659 (N.D. Ill. 2019) ............................................................2

*Benson v. Newell Brands, Inc.*,
    No. 19-cv-6836, 2021 WL 5321510 (N.D. Ill. 2021) ...................................................... *passim*

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ........................................................................................3, 8, 16, 17

*Dietrich v. C.H. Robinson Worldwide, Inc.*,
    No. 18-cv-4871, 2020 WL 635972 (N.D. Ill. Feb. 2020) ......................................................12

*Flynn v. FCA US LLC*,
    327 F.R.D. 206 (S.D. Ill. 2018) ...........................................................................................17

*Garner v. Healy*,
    184 F.R.D. 598 (N.D. Ill. 1999) ......................................................................9, 11, 12, 16, 18, 19

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    No. 12-cv-0660, 2016 WL 4992504 (S.D. Ill. 2016) ..............................................................9

*Howard v. Cook Cnty. Sheriff's Off.*,
    989 F.3d 587 (7th Cir. 2021) ...............................................................................................11

*Mednick v. Precor, Inc.*,
    320 F.R.D. 140 (N.D. Ill. 2017) ......................................................................................9, 18

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ...........................................................................................15, 17

*Mullins v. Direct Digital, LLC*,
    No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. 2014) ...........................................2, 10, 11, 13, 15, 18, 19

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) .......................................................................................2, 13, 14

*Rohlfing v. Manor Care, Inc.*,
    172 F.R.D. 330 (N.D. Ill. 1997) ...........................................................................................16

*Schoonover v. Iovate Health Scis. U.S.A. INC.*,
    No. 22-cv-01487 (C.D. Cal. 2023) ...........................................................................13

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ...........................................................9, 10, 15, 16, 18

*Suchanek v. Sturm Foods, Inc.*,
    311 F.R.D. 239 (S.D. Ill. 2015) .................................................................. *passim*

*Tylka v. Gerber Prod. Co..*,
    178 F.R.D. 493 (N.D. Ill. 1998)...............................................................15, 16, 17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011)...............................................................................................8, 9

## I. __INTRODUCTION__

This case is a putative class action regarding Defendant's false advertising of certain of its store brand products as "recyclable" when in fact they are not. Specifically, as alleged in Plaintiff's First Amended Complaint ("FAC"), Defendant marketed and sold a number of its store-brand plastic products as being "recyclable" even though they lacked the necessary Resin Identification Code ("RIC") that would allow them to be recycled. (FAC, Dkt. 31, at ¶¶ 21–22, 30–33.) Accordingly, the ultimate common and predominant question in this case is whether the packaging for the plastic products that the Class purchased is deceptive, misleading, and/or unfair because the products themselves do not contain the necessary disclosures that would allow them to be recycled.

Plaintiff was an ordinary consumer who purchased two of Defendant's "recyclable" plastic products in Illinois relying on Defendant's packaging disclosures that the products were in fact recyclable. However, Plaintiff was deceived and misled by Defendant's product packaging because the products she purchased did not have an RIC code on the products themselves such that they were not in fact recyclable. As such Plaintiff did not get the recyclable products that she thought she had paid for. Plaintiff asserts causes of action under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), breach of express warranty, and unjust enrichment. While Defendant challenged Plaintiff's claims on the merits in its Motion to Dismiss (Dkt. No. 13), the Court denied Defendant's motion and found that Plaintiff had stated a claim that Defendant's products were deceptively labeled because they failed to include an RIC code. (Dkt. No. 24, at 34–35, 36–37.) Plaintiff now seeks class certification of a multi-state class of consumers under Fed. R. Civ. P. 23(a) and 23(b)(3) for damages and proposes that the Court define the Class as:

1

All persons who, during the applicable limitations period, purchased in the state of Illinois, California, Florida, Massachusetts, Michigan, Missouri, New Jersey, New York, and Washington any of the following products (the "Recyclable Products"):

7-Eleven Brand Foam Plates
7-Eleven Brand Foam Bowls
7-Eleven Brand Snack Bags
7-Eleven Brand Freezer Bags
7-Eleven Brand Sandwich Bags[1]

Whether Defendant's advertising and representations that the above products were recyclable when in fact they did not contain an RIC code was unfair, deceptive, and/or misleading to a reasonable consumer is the predominant question in this litigation because this threshold question must be answered affirmatively by the finder-of-fact for Plaintiff and the Class to prevail on their claims for violation of their respective states' consumer protection laws. Critically for the purposes of this Motion, this question is an objective question susceptible to common class-wide proof because, as this Court already determined in its ruling denying Defendant's Motion to Dismiss, it concerns whether Defendant's product packaging is objectively false, unfair, deceptive, and/or misleading to a "reasonable person," and not whether the claim is subjectively false to any particular individual. *See* Dkt. No. 24 at 24–25; *see also Benson v. Newell Brands, Inc.*, No. 19-cv-6836, 2021 WL 5321510, at \*5 (N.D. Ill. Nov. 16, 2021); *Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903, at \*2 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 259 (S.D. Ill. 2015).

---

[1] Plaintiff now seeks a proposed Class that is narrower than the original Class defined in Plaintiff's First Amended Complaint. (*See* FAC, Dkt. 31, at ¶ 41.) Such modification is appropriate given that Rule 23 allows for modification of orders granting class certification. Fed. R. Civ. P. 23(c)(1)(C); *see also Bakov v. Consol. World Travel, Inc.*, No. 15-cv-2980, 2019 WL 1294659, at \*15 (N.D. Ill. Mar. 21, 2019) ("Plaintiffs are not required to amend their Complaint prior to filing for class certification to delineate the exact contours of their class").

Furthermore, Plaintiff offers expert opinion testimony that demonstrates a methodology for proving damages on a class-wide basis without the need for any individual inquiry of absent members of the Class. Plaintiff maintains that under *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), the appropriate measure of damages is the percentage of Defendant's Recyclable Products' retail price attributable to the deceptive disclosure. The Expert Report of Dr. Ellis Jones, who has decades of experience in studying environmental economics and the impact of "green" branding on consumer purchasing decisions, describes and demonstrates a methodology for measuring the amount of "Price Premium" that is attributable to the deceptive advertising used on Defendant's Recyclable Products. By multiplying the corresponding discount of the percentage price premium with the retail dollar value of the Recyclable Products sold during the Class Period, Plaintiff can compute the dollar difference between what the Class paid for the Recyclable Products, and the value of what they actually received. This difference between what members of the Class paid for and what Defendant actually provided is a valid measure of damages for the claims brought by Plaintiff on behalf of the proposed Class. Importantly, Plaintiff's damages methodology comports with the rule set forth by the Supreme Court in *Comcast* because it measures only those damages attributable to Plaintiff's case theory: the Defendant's deceptive packaging of its Recyclable Products caused Class members to pay for more than what they received.

The other applicable Rule 23(a) prerequisites (numerosity, commonality, typicality, and adequacy), and the additional Rule 23(b)(3) requirements of predominance and superiority are also easily satisfied in this case, as more fully demonstrated below.

For these reasons, and those stated further below, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Class Certification, certify the proposed Class, designate Plaintiff as Class Representative, appoint Plaintiff's Counsel as Class Counsel, and direct notice to be issued

3

to the Class in a form to be determined.

## II.     SUMMARY STATEMENT OF FACTS

### A.     Defendant's Recyclable Products Were Uniformly Deceptive.

From October 1, 2017 through October 1, 2021, Defendant sold over ▇▇▇▇▇▇ units of the Recyclable Products in its retail stores located in the nine states at issue. (*See* Declaration of Eugene Y. Turin, filed herewith, at ¶ 12.) As shown below, all of Defendant's Recyclable Products featured a claim on their packaging that they were "recyclable."



(*See* document produced in discovery as SEI_0000294, 296, filed herewith as <u>Exhibit 1</u>.)



(*See* document produced in discovery as SEI_0000236, filed herewith as <u>Exhibit 2</u>.)

4



(*See* document produced in discovery as SEI_0000140, filed herewith as <u>Exhibit 3</u>.)



(*See* document produced in discovery as SEI_0000153, filed herewith as <u>Exhibit 4</u>.)



(*See* document produced in discovery as SEI_0000244, filed herewith as <u>Exhibit 5</u>.)

5

However, as shown below and alleged by Plaintiff, each of these products were not in fact recyclable because they lacked an RIC code on the actual product. (*See* FAC at ¶¶ 19, 22, 32.)

  

 

(*See* document produced in discovery as CURTIS 000334, filed herewith as <u>Exhibit 6</u>; *see also* <u>Exhibit 7</u>, filed herewith; Turin Decl. at ¶ 8.)

As such, whether each of the Recyclable Products identified above were deceptively labeled because they were not actually "recyclable" because they did not have an RIC code is a common question that is subject to common resolution and a detailed analysis of the merits of Plaintiff's and the Class's claims is not necessary at this stage.

**B. Plaintiff Purchased Defendant's Recyclable Products In Reliance On Their Product Packaging.**

In the summer of 2021 Plaintiff purchased two of Defendant's Recyclable Products during the class period at a 7-Eleven store located in Illinois. (FAC, at ¶ 37; Curtis Deposition at 64:14–66:10.)[2] Specifically, Plaintiff purchased Defendant's store brand foam plates and freezer bags that featured the "recyclable" disclosures shown above. (FAC at ¶¶ 37, 38; Deposition at 74:12–22.) Plaintiff relied on these disclosures when making her purchases and believed that the products she was purchasing were actually recyclable. (FAC at ¶ 38; Curtis Deposition at 41:6–17; 52:23–53:2.) Had Plaintiff known that the products she purchased were not actually recyclable because they failed to include an RIC code, Plaintiff would not have purchased Defendant's Recyclable Products, or would have paid less for them. (FAC at ¶ 40; Deposition at 41:19–42:4, 93:6–20, 95:9–24, 96:20–24, 121:4-14.)

## III. <u>THE PROPOSED CLASS</u>

Plaintiff's First Amended Complaint alleged causes of action for breach of express warranty, unjust enrichment, and violation of the ICFA and other similar states' consumer protection laws. (FAC at ¶¶ 49–68.) As explained in further detail below, and as other courts in this district have found, because the ICFA and the consumer protection laws of California, Florida, Massachusetts, Michigan, Missouri, New Jersey, New York, and Washington are substantially identical, Plaintiff proposes certification of a multi-state class defined as:

> All persons who, during the applicable limitations period, purchased in the state of Illinois, California, Florida, Massachusetts, Michigan, Missouri, New Jersey, New York, and Washington any of the following products:
>
> 7-Eleven Brand Foam Plates
> 7-Eleven Brand Foam Bowls
> 7-Eleven Brand Snack Bags

---

[2] Excerpts of the June 27, 2023 deposition of Plaintiff Devon Curtis are attached hereto as <u>Exhibit 8</u>.

> 7-Eleven Brand Freezer Bags
> 7-Eleven Brand Sandwich Bags

Plaintiff seeks certification of this proposed Class under Fed. R. Civ. P. 23(b)(3) for monetary relief.

## IV.    ARGUMENT

### A.    Legal Standard.

To certify a class action under Rule 23, Plaintiff must satisfy the four prerequisites under Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *Benson*, 2021 WL 5321510, at *1; *Comcast*, 569 U.S. at 33. For a class certified under Rule 23(b)(3), Plaintiff must show that "questions of law or fact common to class members predominate over any question affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

While the Court must conduct a "rigorous analysis" to ensure that Rule 23 requirements are satisfied (*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)), "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen v. Conn. Ret. Plans & Trust*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

### B.    The Requirements of Rule 23(a) are Satisfied.

#### 1.    Numerosity.

Rule 23(a)(1) requires that the proposed classes be so "numerous that joinder of all members is impractical." The numerosity requirement is often easily satisfied where the plaintiff can show that "tens of thousands of units" of the at-issue product were sold. *See Suchanek*, 311 F.R.D. at 253; *Benson*, 2021 WL 5321510, at *2 (finding that the numerosity requirement was

"easily satisfy[ied]" where the "defendants' sales data reveal that the proposed Class . . . include[s] hundreds of thousands of members"). As previously stated, the sales data produced by Defendant indicates that during the class period Defendant sold over ▮▮▮▮▮ of the Recyclable Products just from October 2017 through October 2021—with ▮▮▮▮▮▮▮ more sold through the present. (Turin Decl. at ¶ 12.) Accordingly, the numerosity requirement is plainly satisfied.

### 2. Commonality.

Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is construed liberally, and the existence of "even a single common question will do." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014) (quoting *Dukes,* 564 U.S. at 359). "Factual variations among the class members will not defeat a class action" *Garner v. Healy*, 184 F.R.D. 598, 601 (N.D. Ill. 1999). "What matters" in establishing commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. This exists "where a defendant has engaged in standardized conduct toward members of the class," *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-cv-0660, 2016 WL 4992504, at *6 (S.D. Ill. Sept. 16, 2016) (citation omitted); *Suchanek*, 764 F.3d at 756 ("The critical point is "the need for *conduct* common to members of the class") (emphasis in original) (internal citation omitted).

Here, the conduct at issue – Defendant's advertising that its Recyclable Products are "recyclable" when they did not feature an RIC code – is common to all members of the Class. As explained, Defendant's Recyclable Products all had the same disclosure that they were "recyclable," and all failed to feature an RIC code on the product itself. (*See* Sec. II.A above.) As such, all members of the Class were exposed to the same allegedly deceptive product packaging. *See Mednick v. Precor, Inc.*, 320 F.R.D. 140, 151 (N.D. Ill. 2017) ("all treadmill purchasers

9

presumably saw the graphics on the machines. Courts routinely find that whether a product packaging, seen by all purchasers of the product, is misleading is an issue that satisfied commonality"). This common conduct necessarily results in questions of fact and law that are common amongst all members of the Class. Whether the Recyclable Products are in fact "recyclable" even though they did not feature an RIC code is a common question that is subject to class-wide resolution. (*See* FAC at ¶ 22 ("the foam plates themselves do not feature any RIC number on the front or the back and thus cannot be separated in the recycling process"); *id.* at ¶ 32 ("Defendant's Freezer Bags are unmarked without any RIC number. Thus, there is no way for the Freezer Bags to be separated during the sorting process and they cannot be recycled")). Similarly, whether Defendant's Recyclable Products were deceptive to a reasonable consumer is also a common question of law that is also subject to class-wide resolution. *See Suchanek*, 764 F.3d at 758 (finding that the district court abused its discretion in denying class certification where "[t]he question whether the [defendant's] packaging was likely to mislead a reasonable consumer is common to the claims of every class member"); *Mullins*, 2014 WL 5461903, at *2 (finding that commonality was satisfied where "the questions of law and fact are common to the class: whether the ingredients of Instaflex provide any health benefits to a person's joints and whether Instaflex's labeling deceives the public consumer"); *Benson*, 2021 WL 5321510, at *2 (finding commonality was met because "the claims of the entire Class and Subclass derive from a single course of conduct by defendants: the labeling and marketing of NUK pacifiers"). As such, as this Court has already found in its ruling on Defendant's motion to dismiss, whether Defendant's packaging was deceptive is a common question that is subject to the objective reasonable consumer test. (Dkt. 24 at 23–25.) Accordingly, there are numerous common questions across the Class.

3.    Typicality.

Under Rule 23(a)(3), a class representative's claims or defenses have to be "typical of the claims or defenses of the class." The typicality requirement is not "strict" and is satisfied even if there are some factual dissimilarities between class representative's claim and the claims of the other class members. *Garner*, 184 F.R.D. at 603. Typicality is satisfied where the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Benson*, 2021 WL 5321510, at *3 (quoting *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021)).

Here, Plaintiff alleges a common deceptive practice by Defendant that she and all of the other members of the Class were exposed to—Defendant's representation on the product packaging of its Recyclable Products that they were "recyclable" when they did not contain an RIC code on the products themselves. *See Benson*, 2021 WL 5321510, at *3 ("Typicality is satisfied here because plaintiffs and the proposed class members are subject to the same alleged practice—defendants' uniform labeling of their pacifiers—and their claims are based on the same legal theory that the labeling was deceptive"). Furthermore, Plaintiff testified that she purchased Defendant's Recyclable Products in reliance on its product packaging and believed that they were actually recyclable. (FAC at ¶ 38; Curtis Deposition at 41:6–17; 52:23–53:2.) Plaintiff also testified that she paid more for the products than she otherwise would have, or would not have bought them at all had she known they were falsely advertised. (FAC at ¶ 40; Curtis Deposition at 41:19-42:4, 93:6-20, 95:9-24, 96:20-24, 121:4-14.) As such, as numerous courts have found in identical cases involving claims of deceptively labeled consumer goods, Plaintiff's claims are typical of the Class she seeks to represent. *Mullins*, 2014 WL 5461903, at *2 (finding that typicality is satisfied where "Plaintiff claims that he relied on Instaflex's label when he purchased it and he received no benefit

after using it"); *see also Suchanek*, 311 F.R.D. at 255 ("the claims of the named representative and the other class members have the same essence: they were duped into believing they were purchasing ground coffee, and they would not have purchased GSC (or paid as much as they did) had they known it was actually instant coffee"); *Garner*, 184 F.R.D. at 604 ("Both Garner and Grant purchased one or more of Defendants' 'non-wax 'wax' products,' and both appear to have believed that they were getting something more than they ultimately received"). Moreover, given that the class is limited to purchasers of essentially two types of plastic products sold by Defendant – foam plateware and its own store-brand of plastic storage bags – and that Plaintiff purchased one of each type of product – a foam plate and a freezer bag (FAC at ¶¶ 37, 38) – there is no question that Plaintiff can represent all of the putative class members at issue.

4.   Adequacy.

Rule 23(a)(4) requires that the class representative and her counsel adequately represent the proposed class. Whether adequacy is met involves a two-part inquiry: (1) do the named plaintiff's claims conflict with those of the other class members and (2) will the named plaintiff and her counsel prosecute the action vigorously on behalf of the class? *Benson*, 2021 WL 5321510, at *3 (citing *Dietrich v. C.H. Robinson Worldwide, Inc.*, No. 18-cv-4871, 2020 WL 635972, at *4 (N.D. Ill. Feb. 11, 2020)). Here, there are no conflicts of interest between Plaintiff and her counsel and the interests of any other Class members. Plaintiff purchased the same Recyclable Products as the other members of the Class, alleges that she relied on the same misrepresentations on the Products' labeling, and seeks the same relief for herself and the other members of the Class. FAC at ¶¶ 38, 40; Curtis Deposition at 41:6– 42:4; 52:23– 53:2 41:19– 42:4, 93:6– 20, 95:9– 24, 96:20– 24, 121:4– 14; *see Suchanek*, 311 F.R.D. at 256 ("[t]he named Plaintiffs all claim that the overall GSC packaging was deceptive in that it created . . . the misrepresentation that the product was premium").

Nor is there any question that Plaintiff has "sufficient interest in the outcome of the case" given her willingness to participate in the case and sit for a deposition. *Mullins*, 2014 WL 5461903, at *3 ("Plaintiff has already retained experienced . . . class counsel, attended depositions, and has no disabling conflicts with the interests of the class").

Similarly, Plaintiff's counsel has extensive experience in prosecuting consumer class actions and have been appointed class counsel in numerous cases on behalf of hundreds of thousands of class members, including in a similar consumer class action involving deceptive product packaging. *See* Turin Decl. at ¶ 14; *Schoonover v. Iovate Health Scis. U.S.A. INC.*, No. 22-cv-01487 Dkt. 111 (C.D. Cal. Aug. 21, 2023). Plaintiff's counsel has also dutifully prosecuted this case, including conducting extensive written and oral discovery of Defendant's corporate representatives, third-party discovery, and obtaining two expert reports. (Turin Decl. at ¶ 16.) Plaintiff's counsel is committed to prosecuting this action to conclusion, and have the necessary resources to do so.

### C. The Proposed Class Is Ascertainable.

Separate but implicit to the class certification requirements under Rule 23, courts in the Seventh Circuit also assess whether the proposed class is "ascertainable." *Suchanek*, 311 F.R.D. at 260 ("The Seventh Circuit has long recognized an implicit requirement under Rule 23 that a class must be ascertainable, meaning the class must be defined clearly and that membership be defined by objective criteria") (quoting *Mullins*, 795 F.3d at 657 (internal quotations omitted)). However, the Seventh Circuit in *Mullins* made clear that ascertainability does not mean that the plaintiff seeking class certification needs to be able to "identify all who fall within the class definition." 795 F.3d at 657. Rather, the focus is solely on the "adequacy of the class definition itself and not whether, given an adequate class definition, it would be difficult to identify particular members of

13

the class." *Suchanek*, 311 F.R.D. at 260 (quoting *Mullins*, 795 F.3d at 659) (internal quotations omitted).

Here, as in *Benson*, the class is defined according to a purely "objective criteria" – whether an individual purchased one of the five identified Recyclable Products in one of the nine states during the applicable limitations period – and is thus not based on "success on the merits," and "identif[ies] a particular group of people . . . allegedly harmed in a particular way . . . during a specific time period." 2021 WL 5321510, at *8. Importantly, as explained above, Plaintiff is not required to prove that she can actually identify the class members at this juncture. *Id.* This is especially the case for "low-value claims" involving consumer goods. *Id.* (citing *Mullins*, 795 F.3d at 665). Indeed, in such cases, "[i]dentification of class members . . . can take place at the claims-administration stage through self-identification in sworn affidavits[.]" *Id.* Furthermore, even if identification of potential class members *was* a concern, Defendant maintains detailed purchase data that shows *all* purchases transactions of the Recyclable Products, including credit card and 7/11 Rewards information data for individuals who made purchases using credit cards and/or provided their rewards program information. (*See* excerpt of document produced by Defendant in discovery as SEI_0000360, attached hereto as Exhibit 9.) To the extent necessary, this data would allow identification of the vast majority of the class members.

### D. The Requirements of Rule 23(b)(3) are Satisfied.

#### 1. Predominance.

Certification of a class under Rule 23(b)(3) requires a showing that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods" of adjudicating the controversy. In determining whether predominance is satisfied courts look to the "elements of the

underlying cause of action" (*Benson*, 2021 WL 5321510, at *3 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 810 (7th Cir. 2012)), as well as whether "a plaintiff's theory of damages matches their theory of liability." *Mullins*, 2014 WL 5461903, at *3; *see also Suchanek*, 311 F.R.D. at 257. Importantly, as the Seventh Circuit has noted, "[p]redominance is a test readily met in certain cases alleging consumer . . . fraud[.]" *Suchanek*, 764 F.3d at 750 (quoting *Amchem Prods. v. Windsor,* 521 U.S. 591, 625 (1997)).

Here, the common questions necessary to establish Defendant's liability for the allegedly deceptive packaging predominate over any individual issues. The elements of a claim under the ICFA, as this Court has already ruled, are "(1) a deceptive act by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive act; (3) the deceptive act occurred during a course of conduct involving trade or commerce; and (4) actual damage that was proximately caused by the deceptive act." *Benson*, 2021 WL 5321510, at *3; Dkt. 24, at 24. Whether, as here, a product's packaging is deceptive to a "reasonable consumer" is an "objective question" that does not "depend[] on each purchaser's subjective understanding of the package." *Benson*, 2021 WL 5321510, at *6; *Mullins*, 2014 WL 5461903, at *3 ("Proceeding to trial as a class will produce a common answer to whether the advertisements on Instaflex's labels are false"). As such, whether Defendant's advertising of the Recyclable Products as "recyclable" even though they do not have an RIC code is deceptive is a common question that predominates. *See Mullins*, 2014 WL 5461903, at *3 ("Whether the medical studies of Plaintiff's experts will show that [the product] . . . is not effective . . . is a question of fact common to the members of the proposed class"); *Tylka v. Gerber Prod. Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998) ("the ICFA employs an objective standard when determining the materiality of an alleged misrepresentation" such that "it is irrelevant whether a plaintiff believes a misrepresentation is material").

15

Further, while Defendant will likely argue that individual issues predominate because Plaintiff cannot establish that each member of the class relied on the allegedly deceptive package and purchased the Recyclable Products for a variety of personal reasons, courts have regularly found that predominance is satisfied where the plaintiff makes a showing that the misrepresentation was uniformly *presented* to all members of the class—even if they cannot prove that each class necessarily relied on it. *Garner*, 184 F.R.D. at 602 ("[w]hen the fraud was perpetrated in a uniform manner against every member of the class, such as when all plaintiffs received virtually identical written materials from the defendants, courts typically hold that individual reliance questions do not predominate") (quoting *Rohlfing v. Manor Care, Inc.,* 172 F.R.D. 330 (N.D. Ill. 1997)). Here, as clearly shown in the pictures of the Recyclable Products in Section II.A, all of the products featured the same written disclosures that they were "recyclable" such that all of the putative class members were exposed to the same deceptive advertisements. *See Tylka*, 178 F.R.D. at 499 ("All allegedly fraudulent representations were conveyed through widely circulated and generalized advertisements").

Predominance is also satisfied because the class members' "damages are susceptible of measurement across the entire class." *Suchanek*, 764 F.3d at 760 (quoting *Comcast*, 133 S.Ct at 1433). Here, as in the Seventh Circuit's analysis in *Suchanek*, Plaintiff's expert Dr. Ellis Jones presents his analysis how "damages might be computed by taking the difference between the actual value of the package [Plaintiff] purchased . . . and the inflated price she paid[.]" 764 F.3d at 760. Indeed, Dr. Jones' expert report explains that consumers pay a price premium for the representation that consumer products are recyclable. (*See* Expert Report of Dr. Ellis Jones, attached hereto as Exhibit 10, at 9 ("There is a long established consensus in the literature demonstrating that consumers are willing to pay a significant premium associated with socially and/or environmentally

16

responsible products"); Ex. 10 at 11 ("The term 'recyclable' is a desirable environmental attribute that consumers seek out in this pursuit and are thus willing to pay extra to purchase such products")). Analyzing specifically Defendant's Recyclable Products, Dr. Jones explains that "[c]onsidering the rarity of finding either foam plates or freezer bags that are, in fact, recyclable, may make these products even more compelling[.]" (*Id.* at 11.) Dr. Jones further calculates consumers' "willingness to pay for products labeled as recyclable" and determines that the "premium for present consumers spending on relatively inexpensive eco-products, such as 'recyclable' foam plates or freezer bags in this case, is likely to be closer to 23.325% given . . . market trends." (*Id.* at 13.) As such, Plaintiff is able to corelate the allegedly deceptive representations on Defendant's Recyclable Products with the price premium that consumers paid. Most importantly, Plaintiff's damages model is "consistent with [her] theory of liability"—that as a result of Defendant's deceptive product labeling consumers were damaged by buying a product that was worth less than what they believed they had purchased. *Suchanek*, 311 F.R.D. at 259 (citing *Comcast*, 569 U.S. at 38).

Further, to the extent that the Court has any doubts about Plaintiff's damages theory, the caselaw is clear that any potential individualized issues pertaining to damages should not be a bar to granting class certification. *See Tylka*, 178 F.R.D. at 499 ("If some class members incurred more damages than others as a result of their actual reliance, then those issues can be resolved when damages are determined"); *Flynn v. FCA US LLC*, 327 F.R.D. 206, 224 (S.D. Ill. 2018) ("Individualized questions regarding damages do not prevent certification under 23(b)(3)") (citing *Messner*, 669 F.3d at 810).

Finally, the fact that Plaintiff seeks class certification of a multi-state class also does not create individualized issues that predominate. Indeed, as the court in *Benson* noted, the consumer protection laws of the eight other states where the putative Class members made purchases –

17

California, Florida, Massachusetts, Michigan, Missouri, New Jersey, New York, and Washington – have been found by other courts to "have sufficient common characteristics as to liability such that multi-state class treatment was appropriate." *Benson*, 2021 WL 5321510, at * 9 (citing *Mullins*, 2014 WL 5461903; *Mednick*, 320 F.R.D. 140; *Suchanek*, 311 F.R.D. at 264). As the court in *Benson* explained after a thorough analysis of each of these states' respective consumer protection statutes, each of these states' "statutes require proof . . . that the deceptive conduct at issue was likely to mislead a reasonable consumer" such that the "same legal standards govern every class member's claim[.]" *Id.* (quoting *Suchanek*, 764 F.3d at 756).

       2.   <u>Superiority</u>.

Finally, class certification under Rule 23(b)(3) must be a superior method of resolving class members' claims. In making such a determination, courts typically evaluate four factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced, (3) the desirability of concentrating the litigation of the claims in a particular forum, and (4) the difficulties likely to be encountered in the management of a class action. *Garner*, 184 F.R.D. at 605.

As other courts have routinely found, "[g]iven the sheer size of this class" class certification will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated[.]" *Mullins*, 2014 WL 5461903, at *3 (quoting *Amchem*, 521 U.S. at 615). Indeed, with over ██████ purchases at issue, there is no question that proceeding with this case on a class basis is superior to individual suits, especially given the low cost of the products at issue. *See Benson*, 2021 WL 5321510, at *5 ("Proving plaintiffs' allegations of consumer fraud will be complex and costly . . . which no rational individual plaintiff would be willing to bear the cost");

*Garner*, 184 F.R.D. at 605 ("The products at issue in this case are relatively low cost items and the modest possible recovery for each individual plaintiff would be dwarfed by individual litigation costs"). The second factor also favors class certification as there is currently no other litigation pending regarding Defendant's Recyclable Products. In addition, as to the third factor, there is little question that consolidation of all of the proposed Class Members' claims in this forum is favorable given that they are "all based on the same alleged fraudulent misrepresentations[.]" *Id.* Finally, there are no concerns regarding the manageability of this case as a class action for the reasons stated above given Defendant's detailed sales records and the objective criteria by which the Class is defined, as well as the ability to notify members of the class by publication notice if needed. *See Mullins*, 795 F.3d at 665 (noting that where class members' contact information is known they can be notified directly, and otherwise publication notice can be used to reach class members).

## V.     <u>CONCLUSION</u>

Defendant engaged in a uniform deceptive practice of labeling its foam plates and bowls, as well as its freezer and snack bags, as "recyclable" even though it failed to provide an RIC code on the products themselves such that they were not, in fact, recyclable. Plaintiff and the other members of the proposed Class that she seeks to certify were all exposed to this deceptive practice and resulted in Plaintiff and the other Class members paying more for a product that they ultimately did not receive. Given the relatively small amount of damages that each Class member has suffered, but the significant damages that they have experienced collectively, and for the reasons outlined in this motion, Plaintiff respectfully requests that the Court certify the proposed Class, appoint Plaintiff as Class Representative, appoint her counsel as Class Counsel, and direct notice to be issued to the Class in a form to be determined.

Dated:  January 31, 2024

Respectfully submitted,

DEVON CURTIS, individually and on behalf of a class of similarly situated individuals,

By:  */s/Eugene Y. Turin*

Eugene Y. Turin
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
bduffner@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2024, I electronically filed the foregoing *Plaintiff's Motion and Incorporated Memorandum of Law In Support of Class Certification* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

Dated:  January 31, 2024                    By:  */s/ Eugene Y. Turin*_____
                                                  Eugene Y. Turin