**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Devon Curtis, individually and on behalf of all other similarly situated individuals,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>7-Eleven, Inc.,<br><br>　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 1:21-cv-06079

Hon. Steven C. Seeger

**7-ELEVEN, INC.'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ......................................................................................................2

        A.    7-Eleven Products ......................................................................................2

        B.    "Recyclable" Products ................................................................................3

        C.    Named Plaintiff, Devon Curtis ...................................................................4

        D.    Proffered Expert Witnesses.........................................................................6

        E.    Procedural History .....................................................................................9

ARGUMENT .......................................................................................................................11

  I.    Plaintiff Has the Burden of Demonstrating That All Class Certification
Prerequisites Have Been Satisfied. ...........................................................................11

  II.    Class Certification Should Be Denied Because Plaintiff Cannot Establish
Plastic Products Must Contain an RIC Code in Order to Be Recycled. .................12

  III.    Plaintiff Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement. .................13

        A.    Common issues do not predominate regarding the alleged material
misrepresentation, let alone causation. .......................................................13

        B.    Determining Whether Members of the Putative Class Were Damaged
Will Require Individualized Proof.............................................................15

  IV.    Proceeding on a Class-Wide Basis Would Not Be Manageable, Much Less
Superior.....................................................................................................................16

  V.    Plaintiff Does Not Satisfy the Typicality or Adequacy Requirements of Rule
23................................................................................................................................18

  VI.    The Proposed Class Definition Is Overly Broad....................................................18

CONCLUSION....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) ...............................................................................11

*Beardsall v. CVS Pharmacy, Inc.*,
    953 F. 3d 969 (7th Cir. 2020) .............................................................................10

*Beaton v. SpeedyPC Software*,
    907 F.3d 1018 (7th Cir. 2018) ...........................................................................11

*Benson v. Newell Brands, Inc.*,
    2021 WL 5321510 (N.D. Ill. Nov. 16, 2021) ....................................................14

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996)............................................................................................17

*Clark v. Bumbo Int'l Tr.*,
    2017 WL 3704825 (N.D. Ill. Aug. 28, 2017) ....................................................20

*Collins v. Vill. of Palatine*,
    875 F.3d 839 (7th Cir. 2017) .............................................................................12

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..........................................................................11, 15, 16

*Eddlemon v. Bradley Univ.*,
    65 F.4th 335 (7th Cir. 2023) .............................................................................12

*Howard v. Cook Cnty. Sheriff's Off.*,
    989 F.3d 587 (7th Cir. 2021) .............................................................................11

*In re Bridgestone/Firestone, Inc.*,
    288 F. 3d 1012 (7th Cir. 2002) .........................................................................17

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    2013 WL 4506000 (N.D. IL Aug 23, 2013) ......................................................18

*In re Fluidmaster, Inc. Water Components Prod. Liab. Litig.*,
    2017 WL 1196990 (N.D. Ill. Mar. 31, 2017).....................................................17

*In re Gen. Motors LLC Ignition Switch Litig.*,
    407 F. Supp 3d 212 (S.D.N.Y. 2019)................................................................16

*In re Sears Roebuck & Co. Tools Mktg. and Sales Prac. Litig.*,
  2007 WL 4287511 (N.D. Ill. Dec. 4, 2007) ............................................................ 14, 15, 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prod. Liab. Litig.*,
  500 F. Supp. 3d 940 (N.D. Cal. 2020), *aff'd sub nom. Schell v. Volkswagen
  AG*, 2022 WL 187841 (9th Cir. Jan. 20, 2022) .......................................................... 16

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
  571 F.3d 672 (7th Cir. 2009) ..................................................................................... 19

*Langendorf v. Skinnygirl Cocktails, LLC*,
  306 F.R.D. 574 (N.D. Ill. 2014) ....................................................................... 13, 14, 18

*Lipton v. Chattem Inc.*,
  289 F.R.D. 456 (N.D. Ill. 2013) ................................................................... 13, 14, 15, 18

*Liston v. King.com, Ltd.*,
  254 F. Supp. 3d 989 (N.D. Ill. 2017) .......................................................................... 18

*McFields v. Dart*,
  982 F.3d 511 (7th Cir. 2020) ..................................................................................... 11

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ..................................................................................... 12

*Mullins v. Direct Dig., LLC*,
  795 F.3d 654 (7th Cir. 2015) ..................................................................................... 11

*Newman v. Met. Life Ins. Co.*,
  885 F.3d 992 (7th Cir. 2018) ..................................................................................... 13

*Oshana v. Coca-Cola Bottling Co.*,
  225 F.R.D. 575 (N.D. Ill. 2005), *aff'd sub nom.*, 472 F.3d 506 (7th Cir. 2006) .......... 14, 18, 19

*Smith-Brown v. Ulta Beauty, Inc.*,
  335 F.R.D. 521 (N.D. Ill. 2020) ................................................................................. 11

*Suchanek v. Sturm Foods, Inc.*,
  311 F.R.D. 239 (S.D. Ill. 2015) ....................................................................... 13, 14, 18

*Szabo v. Bridgeport Mach., Inc.*,
  249 F.3d 672 (7th Cir. 2001) ..................................................................................... 12

*Thorogood v. Sears, Roebuck and Co.*,
  547 F.3d 742 (7th Cir. 2008) ..................................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................. 11

**Rules**

Fed. R. Civ. P. 23 .................................................................................................11, 12, 17, 18

Fed. R. Civ. P. 23(b)(3)..............................................................................................10, 11, 13

## INTRODUCTION

In granting 7-Eleven's motion to dismiss in part, this Court held that "'Recyclable' simply means that the product is capable of being recycled." Dkt. 24 at 26. "'Recyclable' does not mean 'Will Be Recycled at a Facility Near *YOU*!'" *Id.* at 28. The Court's ruling not only guts Plaintiff's substantive claims, effectively it rings the death knell for Plaintiff's class certification motion. Specifically, contrary to Plaintiff's unsupported assertion that plastic products must be stamped with an RIC code to be recyclable, as highlighted below, record evidence unequivocally establishes otherwise. This is significant for several obvious reasons, including the fact that Plaintiff's inability to prove her individual claim renders her motion for class certification moot.

Plaintiff's class certification motion also fails for numerous other reasons. For example, to proceed on a class-wide basis, each class member would have to prove not only that they were deceived, but also that the representation was material to them and otherwise caused them to be damaged. These critically significant facts cannot be established through common proof. To the contrary, Curtis and her designated experts have admitted that a representation regarding whether a product is recyclable is not material to all consumers, or even a substantial percentage of them.

Similarly, because Curtis cannot prove damages on a class-wide basis, individual issues inevitably overwhelm questions common to the class and preclude a finding of predominance. To that end, as addressed in detail in 7-Eleven's *Daubert* motion and summarized below, Plaintiff's proffered damages model is woefully inadequate for multiple reasons. Putting aside that her designated expert is not qualified to render the proffered damages opinion, his proposed approach of simply multiplying sales revenue times 23.325% is a far cry from presenting a model that reliably can be used to calculate a price premium—let alone a premium that is tied directly to a recyclability claim that is immaterial to a significant percentage of consumers. For this reason alone, class certification must be denied.

In addition, proceeding on a class-wide basis would not be manageable, let alone superior. And proceeding on a multi-state basis, as Curtis requests, complicates matters even further. Likewise, the fact that the proposed class definition is overly broad and otherwise inconsistent with the group of individuals Curtis seeks to represent is yet another reason why her motion for class certification should be denied.

## STATEMENT OF FACTS

### A.  7-Eleven Products

7-Eleven operates convenience stores with locations throughout the United States. Am. Compl. ¶ 1, Dkt. 31. Plaintiff's motion for class certification ("Motion") involves five products sold by 7-Eleven: foam plates, foam bowls, freezer bags, snack bags, and sandwich bags (collectively, the "Plastic Products"). Motion at 1–2, Dkt. 78.

The labels for the Plastic Products are not all the same. Specifically, 7-Eleven does not represent that the freezer bags, snack bags and sandwich bags are "Recyclable." The packaging for these products merely informs consumers that the bags are "MADE WITH RECYCLABLE POLYETHYLENE." *Id.* at 4–5. The packaging for the foam bowls and plates is different. For these two products the packaging contains the word "Recyclable" and, in bold text, states that consumers should "Check Your Local Municipality For Recycling Guidelines." Am. Compl. ¶ 21. The packaging also contains the triangular recyclability legend with the Resin Identification Code ("RIC") 6 inside the triangle, indicating that the product is made of expanded polystyrene ("EPS"), which is commonly referred to as "Styrofoam." *Id.*

During the relevant period, there were approximately 1.2 million transactions involving the Plastic Products in the states referenced in Plaintiff's Motion. Decl. of Davina Stevens, ¶ 5. More than half of these sales were cash transactions. *Id.* ¶ 6. 7-Eleven does not maintain customer information for cash transactions. *Id.* ¶ 7. For transactions completed with a debit or credit card,

7-Eleven maintains truncated card numbers but does not otherwise have information that would allow 7-Eleven to link the truncated card number to any specific individual. *Id*. ¶ 8. Some consumers elect to become members of 7-Eleven's rewards program. If a customer provided adequate identifying information when creating their 7-Rewards Member profile, and if the customer linked their 7-Rewards Member Number to a transaction, 7-Eleven may be able to identify the customer associated with that specific transaction. *Id*. ¶ 11. Records reveal, however, that customers only provide such information in connection with approximately 15% of all sales transactions. *Id*. ¶ 10.

### B. "Recyclable" Products

Plaintiff repeatedly has asserted that the Plastic Products must be stamped with an RIC code to be "Recyclable." Am. Compl. ¶¶ 19–22, 32; Motion at 1, 7.[1] Record evidence, however, guts Plaintiff's unsubstantiated position. Specifically, the evidence unequivocally establishes that plastic products without an RIC code—including the five Plastic Products at issue here—can be recycled.

7-Eleven's expert witness, Dr. Robin Cantor, identified several locations where consumers can take the Plastic Products to be recycled even though they do not have an RIC code. *See* Cantor

---

[1] Plaintiff's proffered expert, Ellis Jones, continues this refrain in his report, stating as follows: "It should also bet [sic] noted that many municipalities (e.g., in California, Colorado, Illinois, Pennsylvania, Washington, etc.) explicitly refuse to accept plastics that lack a resin identification code (RIC), more commonly referred to as unnumbered or uncoded plastics, as they are considered to be practically impossible to recycle and often characterized a s serious contaminant (*Kumari et al* 2013)." Jones Report at 10, a copy of which is attached hereto as Ex. 1. A copy of the referenced *Kumari* article, Kumari, et al., *A Novel Mathematical Approach for Optimization of Plastic Degradation*, Int'l J. of Eng'g Trends and Tech. Vol. 4, Issue 8, 2540 (2013), is attached hereto as Ex. 2. Contrary to Jones's statement, the *Kumari* article does not identify where products can or cannot be recycled. Instead, the article acknowledges that products made of polystyrene—such as the plates and bowls at issue here—are commonly recycled and used to make insulation, license plate frames, rulers, and more. Ex. 2 at 2541. Moreover, even if the statement in Jones's report was accurate, at most it suggests that the products may not be recycled at some locations—it does not address, let alone rebut, the fact that the products can be recycled at other locations.

Report at 14–15 and Appendix, a copy of which is attached hereto as Ex. 3.[2] Dr. Cantor explained that:

> [R]ecycling facilities utilize several separation techniques to sort plastics that do not rely on a RIC to indicate the plastic type. Some of these methods utilize gravity to separate materials based on their density while others use an electric field to separate plastics given their tendency to become charged when rubbing against each other. Additionally, optical sensors can be used to identify and separate different types of plastic without a RIC due to their tendency to absorb different wavelengths of light."

*Id*. at 15.

Lest there be any doubt regarding the recyclability of the Plastic Products, on February 19, 2024, an associate of Dr. Cantor's took 7-Eleven Brand snack bags, freezer bags and sandwich bags to a Meijer store in Evergreen Park, Illinois. Declaration of Sebastian Deodat, ¶ 3. After confirming with a Meijer employee that the store would accept the bags for recycling, he deposited the bags in the designated recycling bin at the Meijer store. *Id.* ¶ 3. Similarly, on February 22, 2024, Mr. Deodat took 7-Eleven Brand foam bowls to a Dart store in Chicago, Illinois. After confirming with a Dart employee that the store would accept the foam bowls for recycling, he deposited them in the designated recycling bin at the Dart store. *Id.* ¶ 5.

### C.     Named Plaintiff, Devon Curtis

Being environmentally conscious since childhood, when Ms. Curtis moved to Chicago in 2019, she conducted research to determine what items would be accepted at local municipal recycling facilities. Ex. 4 at 8:13–10:17. Her research indicated that municipal recycling facilities in Chicago would not accept plastic bags or other products made of foam plastic. *Id.* at 16:3–7. Armed with this knowledge, while on her way to a party at a friend's house at 10:30 p.m. on a

---

[2] Ex. __ refers to exhibits to the Declaration of Frank A. Battaglia. This brief cites Jones's report (Ex. 1) as Jones at __, Jones's deposition as Ex. 5 __, Carney's deposition as Ex. 6, the report of 7-Eleven's Expert Dr. Robin Cantor (Ex. 3) as Cantor ¶ __, and Curtis's deposition as Ex. 4 __.

summer evening in 2021, Curtis nevertheless stopped at a 7-Eleven in Chicago and purchased foam plates and plastic freezer bags. *Id*. at 112:7–113:11.

Curtis testified that she typically does not buy plastic bags or products made of foam plastic because she believes they are not recyclable. *Id*. at 33:9–15; 36:19–37:11. Instead, she prefers to buy biodegradable products from big box stores such as Target or Jewel. *Id*. at 36:19–37:11. On occasion, however, if convenient or otherwise necessary to do so, Curtis purchases non-biodegradable items like foam plates or plastic bags. *Id*. at 36:16–37:7. To that end, Curtis testified that she purchased foam plates and freezer bags from 7-Eeven because they were the only options available at the time. *Id*.

Curtis acknowledged that when she goes shopping there are multiple factors that impact her purchase decisions, including brand loyalty, convenience, and the functionality of a product. *Id*. at 48:16–49:8. She also acknowledged that her purchase decisions vary from day to day and purchase to purchase depending on the specific circumstances applicable at that time. *Id*. at 49:9–13. Similarly, she testified that the reasons why she decides to purchase a particular item may be different from, and in fact likely would differ from, the reasons why someone else decides to purchase the same item. *Id*. at 49:14–19. Amplifying this point, she testified that although the recyclability of an item generally is an important consideration for her when making purchase decisions, the recyclability of an item is not necessarily an important consideration for other consumers. *Id*. at 51:13–21. In fact, she went a step further and acknowledged that some people could care less whether an item is recyclable. *Id*. at 51:22–52:1, 53:3–5.

Curtis could not recall whether she saw the recyclability triangle on the packaging when she purchased the foam plates from 7-Eleven. *Id*. at 74:23–75:23. She admitted, however, that had she taken the time to review the packaging, she would have understood that the symbol indicated

5

the product was made of foam plastic, and as such, may not have been recycled at certain locations in Chicago. *Id*. at 77:17–13. Curtis also acknowledged that the foam plate packaging expressly informed customers to "Check your local municipality for recycling guidelines." *Id*. at 81:6–82:9. She could not identify anything that was deceptive or misleading about that statement, other than to say that the statement should have been on the front of the package. *Id*. at 82:2–9.

Similarly, she could not identify anything deceptive or misleading about the statement "made with recyclable polyethylene" on the freezer bags she purchased from 7-Eleven. *Id*. at 83:3–19. Answering further, she acknowledged that the packaging for the freezer bags did not contain any other statements or indication that the bags were "recyclable." *Id*. 84:9–24. She also admitted that she does not know whether the freezer bags she purchased from 7-Eleven to take to her friend's party eventually were recycled. *Id*. at 88:4–8. Finally, Curtis testified that she could not quantify the premium, if any, she paid as a result of 7-Eleven's representation that the foam plates were "recyclable" or the freezer bags were "made with recyclable polyethylene." *Id*. at 96:20–97:8.

### D. Proffered Expert Witnesses

Plaintiff has proffered two purported experts in support of her case. The first individual, Dr. Ellis Jones, has opined that consumers pay significant premiums for products that are labeled "recyclable." Specifically, Jones states that "in this particular case, while an exact estimate is not possible, based on the available research, a reasonable estimate of the eco-premium paid by consumers for the purchase of recyclable products is approximately 23.325% giving due consideration to all of the specific factors in this instance." Jones at 5. As discussed in detail in 7-

Eleven's motion to exclude Jones's testimony,[3] and summarized below, there are innumerable problems with Jones's purported expert opinions.

For starters, although Curtis has proffered Jones as a damages expert, Jones unequivocally admits that he is not an expert in economics, statistics or mathematics. Ex. 5 at 27:11–29:5. Equally troubling, Jones reached his purported expert opinions even though he did not review any 7-Eleven sales data or marketing materials. *Id.* at 43:10–44:16. Likewise, Jones did not conduct any conjoint or other consumer research studies as support for his proffered opinions in this case. *Id.* at 43:3–49:5. Instead, Jones's damage model is nothing more than a mathematical average of high and low values from two articles that generally address environmental issues. *Id.* at 77:6–78:19. And making matters worse, neither article addresses the products at issue here nor do they consider a significant variable at play here—the factors that motivate consumers to purchase "on-the-go" items from convenience stores such as 7-Eleven. *Id.* at 65:10–14; 75:5–24.

Importantly, Jones admits that his 23.325% calculation does not represent a precise or accurate price premium for the items at issue in this case. *Id.* at 61:4–12, 80:5–14. He further admits that an accurate damage calculation cannot be determined without conducting "mathematical gymnastics" on sales and other data. *Id.* at 80:5–10. Notwithstanding the admitted critical importance of such activities, Jones did not review any sales data or otherwise do the necessary "mathematical gymnastics" in formulating his expert opinion. *Id.* at 43:10–44:16; 80:5–14.

In summary, Jones has no expertise or otherwise credible basis to support Plaintiff's claims. Interestingly, however, Jones unwittingly provided testimony that substantially supports

---

[3] 7-Eleven's Motion to Strike the testimony of Dr. Jones and Dr. Carney is being filed simultaneously herewith and incorporated herein by reference.

7-Eleven's defenses and further highlights why this case cannot proceed on a class-wide basis. For example, Jones confirmed that consumers make purchase decisions based on multiple factors, including, most importantly, price, brand loyalty and convenience. *Id.* at 36:18–40:23.[4] He also acknowledged that some consumers do not take social and environmental variables (e.g., product recyclability) into consideration when making purchase decisions. *Id.* at 40:17–23. To that end, Jones acknowledged that "some [consumers] are willing to pay essentially a zero percent premium for recyclable, yes." *Id.* at 69:3–7.[5] When asked how one might specifically differentiate the subset of consumers who make purchase decisions based on recyclability claims from consumers who would not pay any premium for recyclable products, Jones suggested that you could ask them individually. *Id.* at 40:24–41:7.

In contrast to Plaintiff's unqualified expert, 7-Eleven has retained a highly credentialed Ph.D. economist, Robin Cantor, who has provided a detailed report in which she addresses several key issues in this case. Cantor explains the numerous deficiencies in Jones' damage model. *See* Cantor ¶¶ 23–49. Cantor also explains why it is critically important to consider numerous individualized factors and location-specific conditions when evaluating whether the challenged label claims were a material factor in any consumer's purchase decision. *Id.* ¶¶ 37–49. For example, consistent with Plaintiff's testimony and the testimony of her retained experts, Cantor opines that "factors—such as price, quality, convenience and brand familiarity—often overshadow

---

[4] Plaintiff's "rebuttal" expert, Dr. Carney, provided similar testimony. *See* Ex. 6, 49:21–50:22.

[5] Highlighting this point even further, in one article referenced in Jones's report, the authors found consumers' willingness to pay varied widely, ranging from *negative* 24.3% to positive 87.1%. *See* Stephanie M. Tully and Russell S. Winer, *The Role of the Beneficiary in Willingness to Pay for Socially Responsible Products: A Meta-analysis*, 90 J. Retailing, no. 2 at 255 (2014), a copy of which is attached hereto as Ex. 7. In another article referenced in Jones's report, the authors found that more than half of consumers are unwilling to pay any premium for a recyclable product. *See* Eva Camacho-Cuena et al., *An experimental validation of hypothetical WTP for recyclable product*, 27 Environmental and Resource Economics, 313–335 (2004), a copy of which is attached hereto as Ex. 8.

environmental considerations and can be primary drivers in purchase decisions." *Id.* ¶ 40. To that end, she explains that various factors motivate consumer purchases at convenience stores such as 7-Eleven. *Id.* ¶¶ 37–49. "Most significantly, location—particularly proximity to home or work— is an important factor driving convenience store visits and purchases." *Id.* ¶ 45.

And finally, Cantor investigated recycling options and requirements across various communities. Not surprisingly, she found that options vary by geographic location. *Id.* ¶¶ 41–49. Importantly, she identified several locations that consumers can take foam bowls, foam plates and plastic bags to be recycled, even though the products do not have an RIC code stamped on them. *Id.* ¶¶ 41–42, Appendix.

Although provided with adequate opportunities to do so, Plaintiff elected not to depose Cantor or otherwise attack her credentials in any way. Instead, apparently recognizing the glaring deficiencies with Jones's purported expertise, Curtis subsequently proffered Dr. Conor Carney, whom she couched as a "rebuttal" expert. During his deposition, Carney admitted that he had not been retained to render an expert opinion as to a methodology by which damages here could be calculated on a class-wide basis. Ex. 6 at 20:4–8. Instead, Carney merely opined that Jones's reliance on several articles as a basis for his opinions was appropriate. *Id.* at 35:15–36:5.

### E. Procedural History

Plaintiff's original Complaint was premised on the assertion that 7-Eleven deceptively represented that certain of its products were recyclable. *See* Compl. Dkt. 1, Ex. A. 7-Eleven moved to dismiss the original Complaint arguing, among other things, that Curtis failed to state any viable claim. *See generally* Motion to Dismiss, Dkt. 12. On September 13, 2022, the Court entered a Memorandum Opinion and Order ("Opinion") in which it expressly found that "Recyclable" simply means that the product is capable of being recycled." Dkt. 24 at 26. "Recyclable does not mean 'Will Be Recycled at a Facility Near *YOU*!'" *Id.* at 28. Based on this finding, the Court

dismissed certain aspects of Plaintiff's Original Complaint that were tied to specific products. *Id.* at 34, 37. The Court, however, denied the motion to dismiss as to other products based on Plaintiff's allegation that products without an RIC code could not be recycled under any circumstances. *Id.* at 34.

In the Opinion, the Court noted that "the reasonable consumer standard requires a probability that a significant portion of the general consuming public … acting reasonably in the circumstances, could be misled." *Id.* at 25 (citing *Beardsall v. CVS Pharmacy, Inc.*, 953 F. 3d 969, 973 (7th Cir. 2020)). Along the same lines, the Court mused, "Imagine if the class definition included people who never saw the 'recyclable' label, or who don't care about recycling one way or the other. Some people are more concerned about recycling than others (as you can tell by driving down your street)." *Id.* at 18.

Following issuance of the Court's Opinion dated September 13, 2022, Curtis filed a First Amended Complaint in which she redefined the putative class as "all individuals throughout the United States who purchased 7-Eleven plastic products that did not feature a RIC number on the product itself." Am. Compl. ¶ 41. Consistent with the Court's scheduling orders, the parties completed discovery by November 30, 2024. *See* Dkt. 30, 60.

On January 31, 2024, Curtis filed the pending Motion in which she seeks certification of a damages class under Fed. R. Civ. P. 23(b)(3). In her Motion, Curtis once again modified the class, which is now defined as follows:

> "All persons who, during the applicable limitations period, purchased in the state of Illinois, California, Florida, Massachusetts, Michigan, Missouri, New Jersey, New York, and Washington any of the following products: 7-Eleven Brand Foam Plates; 7-Eleven Brand Foam Bowls; 7-Eleven Brand Snack Bags; 7-Eleven Brand Freezer Bags; and 7-Eleven Brand Sandwich Bags.

Motion at 1–2.

10

## ARGUMENT

I.    **Plaintiff Has the Burden of Demonstrating That All Class Certification Prerequisites Have Been Satisfied.**

A class may only be certified if it satisfies the prerequisites of Federal Rule of Civil Procedure 23. *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013). This requires a "rigorous analysis" that may frequently entail "some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Plaintiff bears the burden of demonstrating by a preponderance of the evidence that Rule 23's requirements have been met and that certification is appropriate. *Id.* at 350.

When a plaintiff seeks certification for a damages class under Rule 23(b)(3), as is the case here, the court must find that common questions of law or fact predominate over individual questions, and that a class action is superior to other methods of adjudicating the case. *McFields v. Dart*, 982 F.3d 511, 515 (7th Cir. 2020). "The starting point of the [Court's] predominance inquiry is the substantive elements" for each of the asserted claims, and "the proof necessary for the various elements." *Smith-Brown v. Ulta Beauty, Inc*., 335 F.R.D. 521, 531 (N.D. Ill. 2020) (citation and quotations omitted). "Rule 23 is more than a mere pleading standard." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 597 (7th Cir. 2021) (quoting *Wal-Mart*, 564 U.S. at 350) (internal quotations omitted). A court should not take the plaintiff's allegations at face value when evaluating the Rule 23 factors. *Id*. Instead, the court "must go beyond the pleadings and, to the extent necessary, take evidence on disputed issues that are material to certification." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018).[6] Failure to meet any of Rule 23's requirements preclude class certification. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

---

[6] The class also must meet Rule 23's implicit requirement of ascertainability, meaning that the class is "defined clearly and based on objective criteria." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

## II.     Class Certification Should Be Denied Because Plaintiff Cannot Establish Plastic Products Must Contain an RIC Code in Order to Be Recycled.

When deciding a motion for class certification, the court may conduct a preliminary inquiry into the merits and evaluate the substantive elements of the plaintiff's claims. *Szabo v. Bridgeport Mach.*, *Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (holding that a district court must "make whatever factual and legal inquiries are necessary under Rule 23" to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) ("On issues affecting class certification ... a court may not simply assume the truth of the matters as asserted by the plaintiff. If there are material factual disputes, the court must receive evidence ... and resolve the disputes before deciding whether to certify the class." (internal quotations omitted)); *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 339–40 (7th Cir. 2023) (recognizing that "a district court's analysis of the Rule 23 requirements will often entail some overlap with the merits of the plaintiff's underlying claim," and noting that the district court may consider the merits of a claim to the "extent they are relevant to determining whether the Rule 23 prerequisites for class certification" are met (internal quotations omitted)).

The Amended Complaint is premised on Plaintiff's assertion that plastic products cannot be recycled unless they are stamped with an RIC code. Her unsubstantiated position, however, does not hold water. In fact, record evidence establishes the exact opposite. *See supra* at 4. This fact is dispositive given this Court's previous ruling that "'Recyclable' simply means that the product is capable of being recycled. ... [it] does not mean 'Will Be Recycled at a Facility Near YOU!'" Dkt. 24 at 26, 28. And it is axiomatic that Plaintiff's inability to prove her individual claim renders her motion for class certification moot. *Collins v. Vill. of Palatine*, 875 F.3d 839, 846 (7th Cir. 2017) ("Here, the dismissal of [plaintiff's] claim made the class-certification question

12

irrelevant. When the plaintiff's own claim is dismissed, he can no longer be the class representative." (internal quotations omitted)).

### III. Plaintiff Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement.

In the class certification motion, Plaintiff focuses exclusively on her Illinois Consumer Fraud Act ("ICFA") claim.[7] A deceptive practice claim[8] under the ICFA has five elements: (1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade or commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception. Dkt. 24 at 24 (citing *Newman v. Met. Life Ins. Co.*, 885 F.3d 992, 1001 (7th Cir. 2018)). Because Plaintiff cannot prove the elements of her ICFA claim through common evidence, the case cannot proceed on a class-wide basis.

#### A. Common issues do not predominate regarding the alleged material misrepresentation, let alone causation.

To proceed with an ICFA claim on a class-wide basis, "each class member would have to prove that they were deceived." *Lipton v. Chattem Inc.*, 289 F.R.D. 456, 462 (N.D. Ill. 2013); *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 582–83 (N.D. Ill. 2014) (denying class certification where plaintiff failed to demonstrate the materiality of the challenged label claim). Here, putting aside the fact that the challenged statements are accurate and, therefore, cannot be

---

[7] Plaintiff's class certification motion does not mention, let alone address, how any of the class certification requirements are satisfied with respect to the breach of warranty and unjust enrichment claims asserted in the Amended Complaint. Plaintiff also fails to address the common law of each of the nine states at issue or comparatively analyze those laws to show that the laws are substantially similar and/or that the variances are manageable. Plaintiff's complete failure to address any of these factors is an independent reason why the breach of warranty and unjust enrichment claims cannot proceed on a class-wide basis. *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 253 (S.D. Ill. 2015).

[8] Although Curtis makes a passing reference in her class certification motion to deceptive and unfair acts, "only the first theory is in play here because [Plaintiff] alleges that the conduct was deceptive (but not unfair)." Dkt. 24 at 24.

deemed to be deceptive, record evidence clearly establishes that a representation that a product is recyclable is not material to all, or even a substantial percentage of, consumers. *See supra* at 9.

The situation presented here is in stark contrast to the cases relied on by Plaintiff in her Motion. For example, unlike here, in *Benson v. Newell Brands, Inc.*, 2021 WL 5321510, at *4–5 (N.D. Ill. Nov. 16, 2021), the plaintiff presented expert witnesses who proffered a methodology, including a conjoint study through which they would establish the materiality of the challenged representation. The experts also presented an approach to calculate class-wide damages.[9] *Id.* In contrast, the proffered experts in this case do not present a valid methodology through which materiality or causation can be established. In fact, both Curtis and her designated experts do the exact opposite. Specifically, as discussed *supra* at 6 and 9, Plaintiff's experts admit that the challenged recyclability claim would not be material to a significant percentage of the class.[10] Curtis also admits that she is unable to quantify her purported damages, let alone establish that the challenged recyclability caused her harm. *Supra*, at 5–7. And her experts certainly have not put forth any credible approach to determine damages on a class-wide basis.

Plaintiff's challenges do not end there. Where, like here, the named plaintiff and potentially other members of the class had sufficient knowledge regarding the accuracy of the challenged representation, the plaintiff cannot establish on a class-wide basis that every member of the class was deceived by the labeling and suffered damages. *See, e.g.*, *Lipton*, 289 F.R.D. at 462 (N.D. Ill.

---

[9] Curtis' reliance on *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239 (S.D. Ill. 2015) is misplaced for the same reasons.

[10] In that regard, this case is like others in which courts have denied class certification because consumers had a variety of reasons and motivations for buying the products in question. *See Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575 (N.D. Ill. 2005), *aff'd sub nom.*, 472 F.3d 506, 513–15 (7th Cir. 2006); *In re Sears Roebuck & Co. Tools Mktg. and Sales Prac. Litig.*, 2007 WL 4287511, at *6–9 (N.D. Ill. Dec. 4, 2007); *Langendorf*, 306 F.R.D. at 581–84; *Lipton*, 289 F.R.D. at 461–62; *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 747 (7th Cir. 2008).

2013) ("These differences among the proposed class require that the key liability issues—whether a given class member was deceived by [the product's] labeling … can be resolved only on an individual basis."); *In re Sears*, 2007 WL 4287511, at *5 (denying class certification of ICFA claim where the class included "people who (1) bought Craftsman tools but never saw any Craftsman advertising; (2) bought Craftsman tools but never saw advertising representing that the tools were made in the United States; and (3) bought Craftsman tools with the knowledge that those tools were not made in the United States.").

### B. Determining Whether Members of the Putative Class Were Damaged Will Require Individualized Proof.

If a plaintiff cannot prove damages on a class-wide basis, then individual issues "inevitably overwhelm questions common to the class," and preclude a finding of predominance. *Comcast*, 569 U.S. at 34. As addressed in detail in 7-Eleven's *Daubert* motion and summarized above, Plaintiff's proffered damage model is woefully inadequate, for multiple reasons. Putting aside that Jones is not qualified to render an expert opinion on damages, he admits that his proposed 23.325% is, at best, an estimate of what a consumer might be "willing to pay" for a recyclable product. Ex. 5 at 61; 88:6–10. This is a far cry from presenting a model that reliably can be used to calculate a price premium–let alone a premium that is tied directly to a recyclability claim that Plaintiff and her designated experts acknowledge is immaterial to a significant percentage of consumers.

To that end, Jones—who is not an economist—clearly does not understand the important difference between "willingness to pay" and "price premium." Importantly, the market price premium is measured by the difference between actual prices and but-for prices. Cantor ¶ 24. It is the interaction of supply and demand that determines equilibrium pricing in the two states of the world (actual and but-for). *Id.* Numerous courts have acknowledged this basic principle of

economics.[11] Succinctly stated, Plaintiff fails to provide a damages model that is "capable of proof at trial through evidence that [was] common to the class rather than individual to its members," and has not shown that damages are "measurable on a class-wide basis through use of a common methodology." *Comcast*, 569 U.S. at 30 (internal quotations omitted). For this reason alone, the pending motion for class certification must be denied.

## IV.    Proceeding on a Class-Wide Basis Would Not Be Manageable, Much Less Superior.

When determining whether a class action is the superior method of adjudication, the court should assess the advantages and disadvantages of using the class action device in relation to other methods of adjudication. Proceeding on a class-wide basis in this case would result in an overwhelming number of mini-trials. For example, the Court would need to address the following issues on an individual basis: (1) the product(s) each class member purchased;[12] (2) whether each individual saw the challenged label claims on the product(s); (3) whether, like Curtis, each individual had preexisting knowledge regarding which items would be accepted by local recycling facilities; (4) whether the challenged recyclability representation had any impact on the individual's purchase decision; (5) whether the individual took the purchased product(s) to Meijer, Dart or other locations for recycling; and (6) whether the alleged misrepresentation caused the individual to be damaged. The need to address these, and potentially other issues, on an individual basis destroys any benefit that class certification might otherwise offer.

---

[11] *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prod. Liab. Litig.*, 500 F. Supp. 3d 940, 949 (N.D. Cal. 2020), *aff'd sub nom. Schell v. Volkswagen AG*, 2022 WL 187841 (9th Cir. Jan. 20, 2022) (rejecting plaintiff expert's overcharge analysis because the expert "ignore[d] the 'supply' part of the supply/demand curve."); *see also In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp 3d 212, 237 (S.D.N.Y. 2019) (court recognized the importance of considering both demand and supply-side data, stating, "[T]he court has found no case holding that a consumer may recover based on consumers' willingness to pay irrespective of what would happen in a functioning market (i.e., what could be called sellers' willingness to sell).").

[12] This would be necessary because the label claims on the Plastic Products vary from one another.

The complexity of proceeding with a multi-state class, as requested by Plaintiff, complicates matters even further. As the Seventh Circuit has noted, "no class action is proper unless all litigants are governed by the same legal rules. Otherwise, the class cannot satisfy [Rule 23's] commonality and superiority requirements." *In re Bridgestone/Firestone, Inc.*, 288 F. 3d 1012, 1015 (7th Cir. 2002). Federal courts are particularly unwilling to certify classes under laws of multiple states involving state consumer protection law because such statutes are "a patchwork of rules representing the diverse policy judgments in lawmakers of 50 States." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 570 (1996).

It should be noted that it is Plaintiff's burden to show that variations in state law will not make the class unmanageable. *In re Fluidmaster, Inc. Water Components Prod. Liab. Litig.*, 2017 WL 1196990, at *43 (N.D. Ill. Mar. 31, 2017). Curtis does not provide the Court with any analysis of the consumer fraud laws of the nine states that fall within her class definition, much less provide an explanation of how the differences in these laws reasonably could be managed if this case were to proceed on a class-wide basis. Although not its burden to do so, 7-Eleven nevertheless provides an analysis of the statutes from the nine states at issue that clearly demonstrates outcome-determinative variations of the laws. *See*, Chart of State Consumer Protection Statutes, a copy of which is attached as Ex. 9. Some key variations include:

**Causation**: Illinois requires each purchaser to prove they saw and were deceived by the statement at issue; causation may not be inferred. New Jersey has a narrow presumption of causation for class members; however, no presumption applies in the absence of evidence class members reacted identically–which undisputedly is not the situation in this case. Missouri requires proximate causation but excludes consumers who knew about the misrepresentation and still purchased the product.

**Scienter**: Several of the identified states have no scienter requirement, whereas Illinois requires that a defendant intended consumers to rely on the purported misrepresentation. Michigan requires intent to deceive.

**Remedies**: The remedies and statutes of limitations in each state vary significantly.

17

**Other variations**: New York and Washington require a showing of public interest, defined differently by each. Massachusetts and New Jersey require pre-suit notice. Missouri has additional specific requirements for class action.

The numerous and significant variations in applicable state laws are yet another reason why this case should not proceed as a class action.[13]

## V. Plaintiff Does Not Satisfy the Typicality or Adequacy Requirements of Rule 23.

For the reasons discussed *supra* at 6, Plaintiff's claims are atypical, and she is not an adequate representative. *See Oshana*, 472 F.3d at 514; *Lipton*, 289 F.R.D. at 459–60; *In re Sears*, 2007 WL 4287511, at *6–7. In summary, Curtis admits that she knew plastic bags and products made of foam plastic might not be recycled in Chicago. Ex. 4 at 77:17–78:9. Notwithstanding this knowledge, she elected to buy plastic bags and foam plates from 7-Eleven—presumably because convenience was the primary driver for that purchase decision.

## VI. The Proposed Class Definition Is Overly Broad.

To satisfy Rule 23's requirements, Plaintiff is required to demonstrate an identifiable class. *Oshana v. Coca-Cola Bottling Co*., 225 F.R.D. 575, 580 (N.D. Ill. 2005), *aff'd sub nom*., 472 F.3d 506 (7th Cir. 2006). Curtis has not presented the Court with a viable method to do so. To that end, Curtis grossly misstates the ability to identify class members through sales records. Contrary to her assertion, *at most*, 7-Eleven might be able to identify 15% of consumers who purchased the products at issue. *See supra* at 9–10.

And Plaintiff's position fails for an even more basic reason. In considering whether a class can be certified, one overarching requirement is that the plaintiff set forth a class definition that is

---

[13] Certification of a multi-state class would be improper for additional reasons. For example, courts have concluded that certification of a multi-state class turns on the participation of at least one representative plaintiff from each state. *See, e.g., In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000 at *8 (N.D. IL Aug 23, 2013); *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1001 (N.D. Ill. 2017). Here, the case only involves one named plaintiff. *Compare Suchanek*, 311 F.R.D. 239, 264–65 (S.D. Ill. 2015) (certifying an eight-state class where there were eight plaintiffs, one from each state).

consistent with her theory of the case and the group of individuals she seeks to represent. During her deposition, Curtis acknowledged that although some consumers might care whether a product is recyclable, many consumers do not care. With that as the backdrop, Curtis testified that "this [case] is for the people that do care about recycling." Ex. 4 at 52:6–7. The proposed class definition, however, necessarily would sweep in consumers for whom the "recyclability" claim was completely irrelevant. It also would sweep in consumers who did not see or otherwise ignored the recyclability claim and individuals who saw the recyclability claim but also read the clear disclaimer that they should check recycling guidelines in the local municipality. The fact that a Proposed Class "will often include persons who have not been injured by the defendant's conduct … does not preclude class certification," but it is also the case that a "class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009); *see also Hardy v. City Optical Inc*., 39 F.3d 765, 770–71 (7th Cir. 1994) (affirming the district court's denial of class certification where plaintiff's claims lacked merit).

The court's decision in *Oshana v. Coca-Cola Bottling Co*., is instructive on this point. 225 F.R.D. 575, 580 (N.D. Ill. 2005), *aff'd sub nom*., 472 F.3d 506 (7th Cir. 2006). In denying class certification, the court in *Oshana* found that although the plaintiff's proposed class definition was seemingly "based on an objective action—the purchase of a fountain diet Coke in Illinois during a five year period," it nevertheless was inappropriate because the class definition "includes individuals who purchased fountain diet Coke with full knowledge that fountain diet Coke contains saccharin" and thus "the proposed class may improperly include individuals who were neither deceived nor harmed." *Id*. at 580–81. The same is true here. *See also Clark v. Bumbo Int'l Tr.*, 2017 WL 3704825, at *3 (N.D. Ill. Aug. 28, 2017) (denying class certification and finding that

"plaintiff's proposed classes are overbroad because they include individuals who could not have been deceived and thus have no grievance under the [ICFA]").

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification should be denied.

Dated: March 4, 2024                    Respectfully submitted,

                                        WINSTON & STRAWN LLP


                                        */s/ Daniel M. Blouin*
                                        Daniel M. Blouin SBN (6198499)
                                        DBlouin@winston.com
                                        Frank Battaglia SBN (6318289)
                                        FBattaglia@winston.com
                                        35 West Wacker Drive
                                        Chicago, IL 60601-9703
                                        +1 312-558-5600 Telephone
                                        + 1 312-558-5700 Facsimile


                                        *Attorneys for Defendant 7-Eleven, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on March 4, 2024, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

*/s/ Frank A. Battaglia*